The STATE of Ohio, Appellee,

v.

FIORENZO, Appellant.

[Cite as *State v. Fiorenzo* (1996), 108 Ohio App.3d 500.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 94–T–5172.

Decided Jan. 2, 1996.

*Jonathan E. Rosenbaum,* Trumbull County Special Prosecutor, for appellee.

*Donald L. Hanni, Jr., J. Walter Dragelevich* and *Charles E. Dunlap,* for appellant.

JOSEPH E. MAHONEY, Presiding Judge.

The following appeal arises from a bench trial before the Trumbull County Court of Common Pleas finding appellant, James Fiorenzo, guilty of theft in office, complicity to theft in office, and four counts of forgery. For the reasons stated below, we affirm.

In January 1993, appellant began his term as the Trumbull County Engineer, having been newly elected to the position in November 1992. Soon after taking office, appellant began seeking information about the process that he needed to follow in order to remodel the Trumbull County Engineer's Office.

During appellant's second week in office, he was informed by Roselyn Ferris, Clerk for the Trumbull County Commissioners, that any plans he had for remodeling would require, pursuant to R.C. 307.86, a competitive bidding process if the aggregate cost of the planned renovations exceeded $10,000.[1] During the week prior to this conversation with Ferris, appellant had encountered the bidding requirements of R.C. 307.86 when the county required him to return a vehicle he had attempted to lease, which had a total cost in excess of $10,000.

Despite the advice of Ferris and his previous encounter with the bidding requirements of R.C. 307.86, appellant spoke with Edward Bush, then the Trumbull County Auditor, regarding appellant's remodeling plans. Bush testified that appellant told him that he, appellant, had just spoken with the commissioners' clerk regarding certain procedures of the building laws and that appellant felt that Ferris was "making him jump through hoops." Bush confirmed for appellant the information Ferris had supplied and, on two occasions during the month of January, sent the engineer's office written information about the bidding process. Furthermore, when appellant stated his intention to keep

---

1. For the time period relevant to this case, any project over $10,000 was subject, pursuant to R.C. 307.86, to the competitive bidding process. Effective July 1, 1994, R.C. 307.86 was modified increasing the $10,000 figure to $15,000.

the cost of the office remodeling under $10,000 by using several different contractors, Bush informed appellant that the remodeling would be considered one job. The project, Bush told appellant, could not be split between several contractors in an effort to spread the cost and thereby avoid the competitive bidding process.

Starting in mid-February 1993, appellant began his remodeling project at the Trumbull County Engineer's Office. A total of four rooms were remodeled. On the first floor of the building, the offices used by the engineer and the engineer's secretary were updated, while the conference room was converted into additional office space. Additionally, an old lunchroom on the second floor was converted into a new conference room.

Much of the work done throughout the remodeling project was completed by Trumbull County Engineer employees, working on county time. Appellant was still working in the building throughout the project, and county laborers testified to conversations they had with appellant regarding the quality of work that they had completed and additional work that still needed to be finished. Several county workers testified about their role in the project, which included the following: pulling up and discarding of old carpeting and padding, creation of a permanent wall between the secretary's office and the new office space, electrical work in the new office space, painting of walls, and installation of new shelving in the engineer's office. Other work was contracted out, including laying of new carpeting, wallpapering, installation of new blinds, and renovation of a bathroom connected to the engineer's office.

Beginning in March 1993, the county began receiving billing statements from three separate contractors for work supposedly completed at the Trumbull County Engineer's Office. A statement from Donald E. Walters of "Don Walter's Construction" totaling $6,820.20 was submitted for work done to the first-floor conference room, which had been converted into offices. M.B. Construction, owned by Michael Baka, submitted a statement totaling $7,886.54 for work on the office of the engineer's secretary. Richard L. Warzala, of Warzala Construction, submitted two statements for payment: $8,975 for work on the engineer's office and $1,502 for converting the second-floor lunchroom into the new conference room. All statements, totaling $25,183.74, were approved by appellant and sent to the proper county officials for payment. Although none of the statements provided a complete list of the work done by the contractors, each statement did seek payment for work that had either not been done by that particular contractor or had been actually performed by county employees.

In a letter dated April 7, 1993, Bush informed appellant that the auditor's office had received a number of requests for payment that exceeded the $10,000 limitation imposed by R.C. 307.86. Bush informed appellant that payment would

be delayed, pending a meeting with the county commissioners and other county officials. This meeting was held on May 14, 1993. Although it was acknowledged that appellant failed to comply with the required bidding procedures, the consensus reached at the meeting was that the contractors should be paid, provided that appellant supplied detailed information as to the nature of the remodeling, the materials used, the dates of the work performed, and the names of those individuals who performed the work.

In response to this request, on May 24, 1993, appellant submitted a cost breakdown of the materials and labor used in the remodeling of each office as provided by the three contractors. This cost breakdown was submitted on appellant's stationery and signed by him. On June 8, 1993, after a request by the county commissioners for more information, appellant provided contracts signed by each contractor showing the materials and labor they allegedly provided. As with the earlier billing statements, these cost breakdowns listed items that were either not done by the contractors or actually performed by county employees.

While the county initially withheld paying the submitted statements only because appellant had failed to comply with the bidding procedures, when they received the cost breakdowns, county officials began to question the validity of some of the items listed in those statements. For instance, Bush, apparently referring to the media attention this case had received, testified about the "infamous toilet seat" for which the county was billed $110.60. On June 26, 1993, in an interview with Janet Rogers, a reporter for television station WFMJ, appellant stated that he thought the remodeling of the Trumbull County Engineer's Office would cost over $25,000 and that he had hired three contractors in an effort to comply with the state's bidding procedures.

Following an investigation by the Trumbull County Sheriff's Department, it was revealed that neither Donald Walters, owner of Don Walters Paving Co., nor Michael Baka, owner of M.B. Construction, had participated in the remodeling job at the Trumbull County Engineer's Office. Walters and Baka each testified at trial that sometime in February or March 1993, Richard Warzala, of Warzala Construction, was given a blank bill from each of their businesses. Each man affixed his signature to the bill after it had been filled out. Walters and Baka each testified that he met with Warzala and had no contact with appellant. However, Baka testified to some remodeling work he and Warzala performed on appellant's home in May 1993.

In addition, comparative estimates were given by local businesses of the work that was performed at the Trumbull County Engineer's Office and revealed that the county was grossly overcharged. By way of example, the county was billed approximately $7,700 for carpeting and $11,000 for wallpapering and blinds; the

value of these items was estimated at approximately $1,100 and $4,600, respectively.

On August 26, 1993, appellant issued a press release. In contrast to his interview with Rogers two months earlier, appellant stated in the press release that he had hired only one contractor and did not expect the work to exceed $10,000. Appellant speculated that Warzala must have split his bill for submission by other contractors in an attempt to get paid for services he completed in excess of $10,000.

On January 19, 1994, appellant was indicted by the Trumbull County Grand Jury. Appellant was charged with the following nine counts: one count of dereliction of duty pursuant to R.C. 2921.44(E), one count of complicity to theft in office pursuant to R.C. 2923.03 and 2921.41(A)(1), one count of tampering with records pursuant to R.C. 2913.42(A)(1), four counts of forgery pursuant to 2913.31(A)(2), one count of having an unlawful interest in a public contract pursuant to R.C. 2921.42(A)(4), and one count of theft in office pursuant to R.C. 2921.41(A)(1).

Appellant filed a written waiver of his right to a jury trial on October 11, 1994. That same day, appellant's trial began before a judge from the Wayne County Court of Common Pleas assigned to his case; the judges from the Trumbull County Court of Common Pleas voluntarily recused themselves from hearing the case to avoid any appearance of impropriety as appellant was an elected county official. Appellee rested its case on October 16, 1994, whereupon appellant moved, pursuant to Crim.R. 29, for a judgment of acquittal on all counts as set forth in the indictment. The trial court granted appellant's motion as to those counts alleging dereliction of duty, tampering with records, and having an unlawful interest in a public contract.

The trial proceeded through October 19, 1994, whereupon the trial court, without objection from either party, stated that it would take the matter under advisement, including a review of transcripts of some of the testimony, and would return with its decision within a week or two. On November 8, 1994, the trial court announced its decision, finding appellant guilty of complicity to theft in office, theft in office, and four counts of forgery.

On November 22, 1994, appellant filed a motion for a new trial pursuant to Crim.R. 33(A), which the trial court subsequently overruled on December 15, 1994. Thereafter, the trial court sentenced appellant to a period of eighteen months' imprisonment on the charges of complicity to theft in office and theft in office, which the court merged as one sentence. Appellant was also sentenced to eighteen months' imprisonment on each of the four forgery counts to run concurrently, but consecutive to the theft in office counts, for a total of three years in prison.

Appellant now brings this appeal and raises the following four assignments of error:

"1. The trial court erred to the prejudice of defendant-appellant in failing to return a final verdict in the case until nearly three weeks after the case was submitted to the court for a decision.

"2. The trial court erred to the prejudice of defendant-appellant by convicting him, and ordering separate sentences for forgery, theft in office and complicity to theft in office as such action violates appellant's protection against double jeopardy.

"3. The trial court erred to the prejudice of defendant-appellant by convicting him and ordering separate sentences for forgery, theft in office and complicity to theft in office, as the charges are allied offenses of similar import.

"4. The trial court erred to the prejudice of defendant-appellant, in finding him guilty of theft in office, complicity to theft in office and forgery where the appellee failed to establish all the essential elements of the offenses."

 In his first assignment of error, appellant argues that the twenty-day period from the time the case was submitted for decision, October 19, 1994, to the time when the trial court actually announced its decision, November 8, 1994, violated his right to a speedy disposition of his case. In support of his argument, appellant relies upon R.C. 2938.11(F), which states:

" * * * Any finding by the judge or magistrate shall be announced in open court not more than forty-eight hours after the submission of the case to him."

 Appellant acknowledges that the above statutory provision is merely directory in nature and not a mandatory rule. *State ex rel. Turrin v. Tuscarawas Cty. Court* (1966), 5 Ohio St.2d 194, 196, 34 O.O.2d 350, 351, 214 N.E.2d 670, 671; *Sheffield v. Nieves* (1976), 52 Ohio App.2d 187, 188, 6 O.O.3d 173, 174, 368 N.E.2d 1262, 1263. While the forty-eight-hour period described in R.C. 2938.11(F) is not mandatory, a defendant is entitled to judgment within a reasonable time after a case has been submitted to the court for disposition. *Id.* at 188, 6 O.O.3d at 174, 368 N.E.2d at 1263 (holding that a defendant accused of assault and battery had been denied his right to a speedy disposition of his case when the trial court did not announce its decision until seven months after the defendant rested); *State v. Hatcher* (1982), 2 Ohio Misc.2d 8, 1 OBR 330, 436 N.E.2d 557 (stating that a thirty-three-day delay is not unreasonable for a traffic offense).

Appellant argues that during the period of time before announcing the court's decision, the assigned trial judge, back at his home court in Wayne County, engaged in a course of conduct that unnecessarily delayed the resolution of

appellant's case and possibly tainted the deliberative process. Specifically, the trial judge attended to cases on his own docket including "criminal proceedings of a similar nature" to appellant's. Moreover, "adding to the inappropriateness of the trial court's conduct," the visiting judge reviewed the transcribed testimony of certain witnesses rather than having sections of the transcript read to him in the defendant's presence as is done in jury trials.

Twenty days is not an unreasonable time period for a visiting judge to announce the court's decision on a nine-count indictment which required the evaluation of twenty witnesses and numerous exhibits presented by both sides. This time frame is also not unreasonable in a case containing, as appellant attested to in his several requests for extensions of time in which to file his appellate brief,[2] "numerous complex issues."

In addition, although appellant argues that the trial court's work on his "home docket" possibly "tainted" appellant's case, appellant has failed to substantiate his claims of prejudice by the trial court's actions. Furthermore, appellant seems to argue that a visiting judge who wishes to review a portion of the transcript in a case he has been assigned is required to travel back and forth between distant counties so that the transcript can be read to him in the presence of the accused. Appellant cites no authority for this proposition and we refuse to set such a precedent. Likewise, appellant has failed to show how he was prejudiced by the trial court's actions.

Accordingly, appellant's first assignment of error is without merit.

In the second assignment of error, appellant contends that the trial court erred by convicting him and ordering separate sentences for forgery, theft in office, and complicity to theft in office as such action violates his protection against double jeopardy. In the third assignment of error, appellant asserts that the trial court erred by convicting him and ordering separate sentences for the aforementioned crimes as they are allied offenses of similar import.

These two assignments of error are interrelated, and, therefore, will be addressed together.

R.C. 2941.25 states:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

---

2. Beginning March 3, 1995, appellant filed his first of many requests for additional time in which to file his brief to this court. Appellant finally requested leave to file his brief instanter on July 12, 1995.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

The protection afforded by this statute is rooted in the concept that multiple punishments for single crimes violates the Double Jeopardy Clauses of the United States and Ohio Constitutions. *State v. Fields* (1994), 97 Ohio App.3d 337, 347, 646 N.E.2d 866, 872, citing *N. Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656; *State v. Thomas* (1980), 61 Ohio St.2d 254, 260, 15 O.O.3d 262, 265, 400 N.E.2d 897, 902.

In *Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309, the Supreme Court of the United States held:

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

The *Blockburger* test is known as the "same elements" test. Subsequently, in *Grady v. Corbin* (1990), 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548, the high court established the "same conduct" test which provided that "if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted," a second prosecution may not be had. *Id.* at 510, 110 S.Ct. at 2087, 109 L.Ed.2d at 557.

More recently, however, in *United States v. Dixon* (1993), 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556, the United States Supreme Court overruled the *Corbin* decision, finding that it lacked constitutional roots and was wholly inconsistent with precedent and the common law. Thus, the "same elements" test set forth in *Blockburger* is still applied today in determining whether a defendant's double jeopardy rights have been violated.

With respect to allied offenses, the Supreme Court of Ohio has set forth the following test:

"In determining whether two offenses are allied under R.C. 2941.25, this court has employed a two-step analysis. The first step requires a comparison of the elements with which the defendant is charged, for the purpose of discovering whether the elements of both offenses correspond to such a degree that the commission of one offense will result in commission of the other. If so, they are allied offenses of similar import. If the court so finds, it must proceed to the second step, which involves a review of the defendant's conduct to determine

whether the offenses were committed separately or with a separate animus as to each. If so, the defendant may be convicted of both." (Citations omitted.) *State v. Mughni* (1987), 33 Ohio St.3d 65, 67, 514 N.E.2d 870, 872.

 In the case *sub judice,* appellant first argues that his convictions for theft in office and forgery constitute a double jeopardy violation. Appellant was convicted of theft in office in violation of R.C. 2921.41(A)(1), which provides:

"(A) No public official or party official shall commit any theft offense, as defined in division (K) of section 2913.01 of the Revised Code, when either of the following applies:

"(1) The offender uses his office in aid of committing the offense or permits or assents to its use in aid of committing the offense[.]"

Appellant was also convicted on four counts of forgery in violation of R.C. 2913.31(A)(2), which provides:

"(A) No person, with purpose to defraud, or knowing that he is facilitating a fraud, shall do any of the following:

" * * *

"(2) Forge any writing so that it purports to be genuine when it is actually spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what was in fact the case, or to be a copy of an original when no such original existed[.]"

 Clearly, convictions on both of these crimes did not violate appellant's double jeopardy rights, nor are they allied offenses of similar import. A conviction for theft in office requires proof that the defendant was a public official and that he used his office in aid of committing the offense. This evidence is not required for a conviction for forgery. Similarly, a conviction for forgery requires proof that the defendant forged a writing, evidence that is not required for a conviction under the theft in office statute. Thus, the commission of one offense will not result automatically in the commission of the other. Hence, the trial court did not err in convicting and sentencing appellant on the forgery counts in addition to the theft in office count.

Based upon the forgery analysis, appellant's convictions on the forgery counts and the complicity to theft in office count is also permissible since the complicity count mirrors the elements found in the theft in office count.

 Regarding the complicity to theft in office count and the theft in office count, both sides agree that they are allied offenses of similar import and that appellant should only have been sentenced on one. Following the state's case,

and after the trial court granted appellant's motion for acquittal on counts one, three, and eight, the following exchange occurred between counsel and the court:

"Mr. Hanni: Your Honor, if the court please, prior to making an opening statement the defense would move the court to strike either Count 2 or Count 9 of the indictment for the reason that they are absolutely the same count, or they're alleging the same crime on the same date for a violation of the same statute. In other words, Your Honor, it's our posture that Counts 2 and 9 are absolutely duplicates of one another.

"The Court: Mr. Rosenbaum.

"Mr. Rosenbaum: Your Honor, the State concedes and has conceded that these are allied offenses of similar import. They present two different theories for the same conduct. The case law I believe is clear that he can be, both cases can be, both counts could be presented to the trier of fact, there can only be sentence on one. It would be up to the State to elect, should there be a verdict of guilty on both counts at the time of sentencing, which it wishes to proceed on.

"The Court: I would agree with the State that the defendant, if there's a guilty finding as to those counts, can only be convicted on one of those. But I'm not going to strike them at this time."

Subsequently, in appellee's brief, appellee stated, "For purposes of this Brief, the State concedes that Complicity to Theft in Office and the Theft in Office are allied offenses of similar import."

In the case *sub judice,* in sentencing appellant, the trial court stated:

"It is ordered that the defendant, James P. Fiorenzo, be imprisoned in the Lorain Correctional Institution in Grafton, Ohio, for the determinate period of eighteen (18) months *each* on Counts 2 and 9; Counts 2 and 9 are merged and only one sentence is imposed * * *." (Emphasis added.)

From this language, it is unclear whether the trial court sentenced appellant to eighteen months for both Counts 2 and 9 and then ran the terms concurrently, or if the court first merged the counts and then imposed a single eighteen-month sentence. However, the outcome is the same either way as it has no effect on the length of time that appellant must remain incarcerated. If the trial court intended to sentence appellant on both counts individually, its decision to run the sentences concurrently made the error harmless.

Accordingly, appellant's second and third assignments of error are without merit.

In his fourth assignment of error, appellant argues that his convictions are not supported by sufficient evidence. However, in the argument portion of his brief, appellant takes issue only with his convictions for forgery. Pursuant to App.R.

16(A)(7) and 12(A)(2), any assignment of error not supported by argument need not be addressed. Hence, we will treat appellant's fourth assignment of error as a challenge to his forgery conviction.

In addressing a claim that a conviction is not supported by the sufficiency of the evidence, the Supreme Court of Ohio has held in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492:

"[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Thus, in reviewing both weight and sufficiency of the evidence, the same test is applied. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts. Moreover, the relevant inquiry does not involve how the appellate court might interpret the evidence. Rather, the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *Id.* at 273, 574 N.E.2d at 503.

▮ Appellant first argues that appellee neglected to prove that appellant failed to perform an act or duty which he was capable of performing as required by R.C. 2901.21(A)(1). Appellant has overlooked that R.C. 2901.21(A)(1) also allows a conviction to be predicated on a voluntary act. It is clear that the prosecution's theory was that appellant was an active participant in the scheme to defraud the county, and that his involvement included the creation of false documents.

▮ Appellant next argues that the prosecution failed, pursuant to R.C. 2901.21(A)(2), to prove that appellant had the requisite culpable mental state for the crime of forgery. The culpable mental state for forgery is "purpose to defraud" or "knowing that he is facilitating a fraud."

In the case *sub judice,* the testimony of Bush and Ferris demonstrated that appellant was familiar with the bidding laws. Notwithstanding appellant's knowledge of the bidding laws, testimony was presented that appellant embarked on a course of conduct wherein he tried to purposely circumvent these requirements. Janet Rogers testified that appellant told her that he hired three contractors and that the job was expected to cost over $25,000. Later, when it was disclosed that some of the contractors did not participate in the remodeling project, and that the county had been overcharged for the work that was done, appellant changed his story and asserted that he had hired only one contractor and that he expected the project to cost under $10,000. This evidence, along with the fact that appellant

and appellant's employees played an active role in the remodeling project, was sufficient for the trial court to conclude that appellant was a knowing participant in the fraud brought upon the county.

A review of the testimony presented at trial reveals that appellant was an active participant in defrauding the taxpayers of Trumbull County and not, as appellant presents to this court, a stooge who blindly signed documents from contractors submitting bills to his office. Accordingly, as appellant's conviction is supported by sufficient evidence, appellant's fourth assignment of error is without merit.

Based on the foregoing, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

CACIOPPO and EDWARD J. MAHONEY, JJ., concur.

MARY CACIOPPO and EDWARD J. MAHONEY, JJ., retired, of the Ninth Appellate District, sitting by assignment.