The STATE of Ohio, Appellee,

v.

ECHOLS, Appellant.

[Cite as *State v. Echols* (2001), 141 Ohio App.3d 556.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2000–07–135.

Decided March 19, 2001.

*Robin N. Piper,* Butler County Prosecuting Attorney, and *Jeffrey P. Giuliano,* Assistant Prosecuting Attorney, for appellee.

*Thomas G. Eagle,* for appellant.

JOSEPH D. KERNS, Judge.

Defendant-appellant, John W. Echols, was tried in Butler County Court and found guilty of a violation of R.C. 4931.49(D), which provided[1]:

---

1. Subsequent to the events in question, "he" was changed to "the person." See 148 Ohio Laws ——, ——.

"No person shall knowingly use the telephone number of the 9–1–1 system to report an emergency if he knows that no emergency exists."

In the trial court, no fine or jail sentence was imposed, and costs were suspended, but Echols has filed a timely notice of appeal to this court, alleging two assignments of error, the first of which states:

"A conviction for knowing use of the 9–1–1 system is not supported by the evidence, is based on insufficient evidence and is against the weight of the evidence, when an out-of-state truck driver is confronted with stressful, upsetting circumstances involving multiple police officers at the side of the road, is advised that his vehicle indicates the presence of drugs, is threatened with arrest, and cannot obtain the assistance of a supervisory officer."

In finding Echols guilty of the offense charged against him, the trial court expressly made the evidentiary findings that follow:

"The court having heard the testimony of the state's witnesses and the defendant and having viewed the videotape of the two encounters between Trooper Williams and the defendant makes the following findings:

"The court believes that any reasonable person would be upset if, as a result of committing a very minor traffic infraction (whether it be having tires touch the lane divider lines as written in the report or a foot over the lane as testified in court) he was, in a period exceeding 1 hour, subjected to intense questioning as to his origination and destination, having his vehicle unsuccessfully searched for illegal drugs, being refused a demonstration where the drug-sniffing dog alerted, and threatened with arrest if he did not move his vehicle.

"However, when the defendant left the area where he was originally stopped he had the necessary information to file a complaint about the officer's procedures after the stop, to wit: the names, rank and telephone numbers of the superiors of all the officers at the scene. The defendant knew that it was a Sunday, a normal holiday, and was advised that the person he should contact was not in the office on Sunday.

"The defendant drove to the rest area and became upset when he was unable to personally contact anyone by telephone, even though he was advised that the officer with whom he should talk to was off duty. The defendant then called 911 but hung up before anyone answered the phone. (I wonder if these charges would have been brought against the defendant if the 911 operator would have answered and the defendant asked to be connected to the officer's superior or requested another trooper to respond to the rest area so that he could file a complaint.) The defendant, however, admitted to Trooper Williams that he made the 911 call and the court finds that there was no emergency. Therefore, the state has met its burden of proof."

■ As may be noted from the foregoing findings, the decision of the trial court was based essentially, if not entirely, upon the conclusion that no emergency existed when the telephone call was made. And in the application of a fundamental principle of appellate procedure, the state of the evidence upon this issue precludes any interference by this court with the factual findings of the county court. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212; see, also, *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. In other words, the evidence and the reasonable inferences deducible therefrom, as shown by the record, were objectively susceptible to the determination of the trial court that the unusual events of December 19, 1999 did not create an emergency of the type contemplated by R.C. 4931.49(D).

However, the particular language of R.C. 4931.49(D) appears to militate against the conviction in this case for a more cogent reason. Here, the undisputed evidence discloses, and the trial court expressly found, that Echols did not "report" an emergency, either real or imagined, to anyone. Indeed, to "report" means to convey or disseminate information; and without any such incriminating report in this case, the state, according to the statute, was relegated to the difficult task of proving that Echols himself knew that no emergency existed.

To be sure, many sincere and well-intentioned users of the telephone number of the 9–1–1 system might differ substantially as to what constitutes an emergency, and this undoubtedly creates a serious administrative problem for the system; but, absent any "report" evidencing falsity of any kind or description, the evidence actually presented herein provides nothing more than a base for speculation as to what was going through the defendant's mind when he hung up the telephone without completing the 9–1–1 call.

As previously indicated, the trial court, in the application of an objective standard, could find from the evidence that no emergency existed when the telephone was used. However, we find that the evidence presented by the state, without more, was totally inadequate, as required by R.C. 4931.49(D), to show that Echols knew that no emergency existed. Particularly, the record is devoid of any false or misleading "report" of an emergency, and the evidence as a whole, therefore, is insufficient to sustain the conviction. The first assignment of error is sustained.

■ The second assignment of error states:

■ "A defendant is denied due process of law due to unreasonable delay in pronouncing a judgment and sentence, where an entry of conviction is not made until forty days after trial."

In support of this alleged error, appellant relies to some extent upon R.C. 2938.11(F), but he acknowledges that this statutory provision is merely directory

in nature and not a mandatory requirement. See *State ex rel. Turrin v. Tuscarawas Cty. Court* (1966), 5 Ohio St.2d 194, 196, 34 O.O.2d 350, 351, 214 N.E.2d 670, 672; cf. *Sheffield v. Nieves* (1976), 52 Ohio App.2d 187, 6 O.O.3d 173, 368 N.E.2d 1262. However, "[w]hile the forty-eight-hour period prescribed in R.C. 2938.11(F) is not mandatory, a defendant is entitled to judgment within a reasonable time after [his] case has been submitted to the court for [determination and] disposition." *State v. Fiorenzo* (1996), 108 Ohio App.3d 500, 506, 671 N.E.2d 287, 291; *Xenia v. Manker* (1984), 18 Ohio App.3d 9, 13-14, 18 OBR 33, 37–38, 480 N.E.2d 94, 98–99.

Here, the facts of the case introduced a novel question of statutory construction; and, while the trial court reached the outer limits of the directory guidelines suggested in R.C. 2938.11(F), we cannot conclude, under the circumstances of this proceeding, that Echols was denied due process of law. Hence, this assignment of error is overruled.

However, in the absence of sufficient evidence that Echols knowingly used the 9–1–1 number to report some type of emergency that he knew did not exist, the judgment of conviction will be set aside and the defendant discharged.

*Judgment reversed*
*and defendant discharged.*

WALSH, J., concurs.

POWELL, J., dissents.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment.

POWELL, Presiding Judge, dissenting.

I must respectfully dissent because I disagree with the majority's conclusion in appellant's first assignment of error that culpability under R.C. 4931.49(D) requires the verbal report of a nonexistent emergency. I believe that it does not.

When construing a statute, the paramount concern is the legislature's intent in enacting the statute. *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 340, 673 N.E.2d 1351, 1353. In determining legislative intent, the court should look at the language of the statute and ascertain the apparent purpose to be accomplished, and then adopt a construction that gives effect to that purpose. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594–595, 589 N.E.2d 1319, 1323.

R.C. 4931.49(D) makes it a crime for a person to "knowingly use the telephone number of the 9–1–1 system to report an emergency if he knows that no emergency exists." The express purpose of the 9–1–1 uniform emergency telephone system is to provide a means by which "individuals can request emergency service by using the telephone number 9–1–1." R.C. 4931.40(A). "Emergency service" is defined as "emergency police, firefighting, ambulance,

rescue, and medical service." R.C. 4931.40(E). Therefore, it appears that the apparent purpose of R.C. 4931.49 is to prohibit the *knowing* use of the 9–1–1 telephone number in the absence of an emergency, not just false reports of emergencies.

There are instances in Ohio where individuals in emergency situations dial 9–1–1 and, for a variety of reasons, do not verbalize the nature of their emergencies. Nonetheless, the 9–1–1 system operators treat the contact as an emergency and dispatch emergency service to the address from which the call originated. An effective emergency response system *requires* such immediate and reasonable responses when an individual accesses or uses the system. To do otherwise would defeat the purpose of the 9–1–1 emergency system and could place 9–1–1 callers in jeopardy for their personal safety.

The expectation of an individual dialing 9–1–1 on a telephone keypad should be the same as pulling a fire alarm in a building: once activated, there will be an emergency response. Therefore, an individual who dials 9–1–1 knowing that no emergency exists "reports" an emergency, even if he or she does not utter a word, and should be held criminally culpable for this behavior. Unfortunately, the majority's construction of R.C. 4931.49(D) permits individuals to knowingly abuse the 9–1–1 system without recourse, so long as the individual does not verbally articulate a false emergency.

For these reasons, I respectfully dissent.