[Cite as *Hanamura-Valashinas v. Transitions by Firenza, L.L.C.*, 2020-Ohio-4888.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

KIMBERLEE HANAMURA-VALASHINAS, et al., : **O P I N I O N**

:

Plaintiffs-Appellants, : **CASE NO. 2019-L-089**

:

- vs -

:

TRANSITIONS BY FIRENZA, LLC, et al., :

:

Defendants-Appellees. :

:

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2017 CV 001631.

Judgment: Affirmed in part, reversed in part, and remanded.

*Clair E. Dickinson*, Brouse McDowell LPA, 388 South Main Street, Suite 500, Akron, OH 44311, and *James T. Dixon* and *Teresa G. Santin*, Brouse McDowell LPA, 600 Superior Avenue, East, Suite 1600, Cleveland, OH 44114 (For Plaintiffs-Appellants).

*Gerry Davidson* and *Jeffrey J. Fanger*, Fanger & Associates LLC, 36 Alpha Park, Highland Heights, OH 44143 (For Defendants-Appellees).

MATT LYNCH, J.

{¶1} Plaintiffs-appellants, Tony Valashinas and Kimberlee Hanamura-Valashinas, appeal the May 7, 2019 Judgment Entry of the Lake County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, Transitions by Firenza, LLC, Anthony Fimiani, and Michael Fimiani, with respect to their claims for fraud and piercing the corporate veil, and the trial court's May 16, 2019

decision to direct a verdict in favor of defendant-appellee, Joseph A. Mannarino, on their Home Construction Service Suppliers Act claim. For the following reasons, we affirm in part and reverse in part the decision of the court below and remand the matter for further proceedings consistent with this opinion.

{¶2} On October 10, 2017, the Valashinases filed a Complaint for Breach of Contract; Breach of Implied Duty; Violations of the Home Construction Service Suppliers Act; Unjust Enrichment; and Slander of Title in the Lake County Court of Common Pleas against Transitions by Firenza, Inc., and Mannarino as its "managing partner." The Complaint was based on a Construction Agreement between the Valashinases and Transitions, Inc. for the remodeling of their home in Concord Township.

{¶3} On December 29, 2017, Transitions, Inc. and Mannarino filed an Answer to Plaintiffs' Complaint. On the same date, Transitions, Inc. filed a Counterclaim against the Valashinases, raising claims of Breach of Contract (Count One), Conversion (Count Two), Unjust Enrichment (Count Three), and Defamation (Count Four).

{¶4} On February 26, 2018, the Valashinases filed an Answer to Transitions, Inc.'s Counterclaim.

{¶5} On November 29, 2018, the Valashinases filed a First Amended Complaint adding Transitions, LLC and the Fimianis as defendants. During the course of the litigation, the Valashinases discovered that all of Transitions, Inc.'s assets had been transferred to Transitions, LLC in 2016, and that Transitions, LLC's members had dissolved the LLC in October 2018. The Amended Complaint identified the Fimianis as members, part-owners, and incorporators of Transitions, Inc. The following claims were

2

raised against Transitions, Inc., Mannarino, and the Fimianis: Breach of Contract (Count I); Breach of Implied Duty (Count II); Violations of the Home Construction Service Suppliers Act (Count III); Unjust Enrichment (Count IV); Slander of Title (Count V); Fraud (Count VI); and Violations of the Consumer Sales Practices Act (Count VII). An eighth claim, Fraudulent Conveyance of Property and Assets (Count VIII), was raised against Transitions, Inc., Transitions, LLC, Mannarino, and the Fimianis.

{¶6} On December 21, 2018, Transitions, LLC filed a Notice of Dissolution effective October 24, 2018.

{¶7} On January 7, 2019, Transitions, LLC filed a Separate Answer to Plaintiffs' First Amended Complaint. On the same date, Michael Fimiani and Anthony Fimiani also filed Separate Answers.

{¶8} On January 17, 2019, Transitions, Inc. and Mannarino filed an Answer to Plaintiffs' First Amended Complaint.

{¶9} On January 17, 2019, Transitions, Inc. filed an Amended Counterclaim.

{¶10} On February 1, 2019, the Valashinases filed an Answer to Transitions, Inc.'s Amended Counterclaim.

{¶11} On April 8, 2019, Transitions, LLC and the Fimianis filed a Motion for Summary Judgment. On the same date, the Valashinases filed a Motion for Summary Judgment as to the Counterclaim of Transitions, Inc.

{¶12} On April 25, 2019, Transitions, Inc. filed a Brief in Opposition to the Valashinases' Motion for Summary Judgment and the Valashinases filed a Brief in Opposition to Transitions, LLC and the Fimianis' Motion for Summary Judgment.

{¶13} On April 30, 2019, Transitions, LLC and the Fimianis filed a Reply Brief to

3

the Valashinases' Brief in Opposition and the Valashinases filed a Reply in Support of their Motion for Summary Judgment.

{¶14} On May 7, 2019, the trial court ruled on the Motions for Summary Judgment. The court dismissed the Valashinases' Fraud claim (Count VI) as to all parties. The court granted summary judgment in favor of the Fimianis with respect to Counts I through VII of the Amended Complaint. The court granted summary judgment in favor of Mannarino with respect to the Valashinases' Breach of Contract claim (Count I), and with respect to Counts II through VII "to the extent that those counts rely on piercing the corporate veil of Transitions by Firenza, Inc. rather than direct liability." The court dismissed Transitions, Inc.'s counterclaim for Defamation (Count Four).

{¶15} On May 13-17, 2019, the case was tried before a jury. At the close of the trial, Transitions, Inc. withdrew its claims for Conversion (Count Two) and Unjust Enrichment (Count Three). The trial court merged the Valashinases' Breach of Implied Duty (Count II), Unjust Enrichment (Count IV), and Slander of Title (Count V) claims with their claim for Breach of Contract (Count I) and dismissed the claim for Violations of the Consumer Sales Practices Act (Count VII). Finally, the court directed a verdict in favor of Mannarino on the Valashinases' claim for Violations of the Home Construction Service Suppliers Act (Count III).

{¶16} The jury found in the Valashinases' favor and against Transitions, Inc. on the Breach of Contract (Count I) claim in the amount of $43,516.00 and for Violations of the Home Construction Service Suppliers Act (Count III) in the amount of $6,400.00 ($1,400.00 compensatory damages and $5,000.00 non-economic damages). The jury found in favor of the Valashinases and against Mannarino, Transitions, LLC, and the

4

Fimianis on their Fraudulent Conveyance (Count VIII) claim in the amount of $9,000.00 but denied an award of punitive damages. The jury found in favor of Transitions, Inc. on the Fraudulent Conveyance (Count VIII) claim and in favor of the Valashinases on Transitions, Inc.'s Counterclaim for Breach of Contract (Count One).

{¶17} On June 6, 2019, the trial court entered its Judgment Entry on the verdict.

{¶18} On June 11, 2019, the Valashinases filed a Motion for Award of Attorney's Fees.

{¶19} On June 13, 2019, Transitions, LLC and the Fimianis (subsequently joined by Transitions, Inc. and Mannarino) filed a Motion for Judgment Notwithstanding the Verdict.

{¶20} On June 21, 2019, Transitions, Inc. and Mannarino filed a Brief in Opposition to the Motion for Award of Attorney's Fees. On June 27, 2019, the Valashinases filed a Reply in Support of the Motion for Award of Attorney's Fees.

{¶21} On June 27, 2019, the Valashinases filed a Motion for Judgment Notwithstanding the Verdict, and a Brief in Opposition to Transitions, LLC, the Fimianis, Transitions, Inc. and Mannarino's Motion for Judgment Notwithstanding the Verdict.

{¶22} On July 2, 2019, Transitions, LLC and the Fimianis (subsequently joined by Transitions, Inc. and Mannarino) filed a Brief in Opposition to the Valashinases' Motion for Judgment Notwithstanding the Verdict.

{¶23} On August 26, 2019, the trial court denied the Motions for Judgment Notwithstanding the Verdict filed by Transitions, LLC and the Fimianis and by the Valashinases.

{¶24} On August 26, 2019, the trial court awarded the Valashinases attorney

fees against Transitions, Inc. in the amount of $5,375.50.

{¶25} On September 3, 2019, the Valashinases filed a Notice of Appeal.

{¶26} On appeal, the Valashinases raise the following assignments of error:

{¶27} "[1.] The trial court incorrectly granted the defendants summary judgment on the Valashinases' fraud claim."

{¶28} "[2.] The trial court incorrectly granted the defendants summary judgment on the Valashinases' piercing the corporate veil claim."

{¶29} "[3.] The trial court incorrectly directed a verdict in Joseph Mannarino's favor on the Home Construction Service Suppliers Act claim."

{¶30} The first two assignments of error challenge a grant of summary judgment pursuant to Civil Rule 56(C). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law," i.e., when "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C). An appellate court's "review of a summary-judgment ruling is de novo." *Fradette v. Gold*, 157 Ohio St.3d 13, 2019-Ohio-1959, 131 N.E.3d 12, ¶ 6.

{¶31} "The elements of an action in actual fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable

6

reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987).

{¶32} The Construction Agreement between the Valashinases and Transitions, Inc. provided as follows with respect to costs: "For Contractor's performance on the Contract, the Owner shall reimburse the Contractor for the Costs of the Work and pay to Contractor a fee (the 'Contractor's Fee') with a guaranteed maximum price of $130,000.00 (the 'Contract Sum'). * * * The Contractor's Fee shall be $15,000. The Costs of the Work shall include the costs for subcontracts, labor, material, services, and supplies, but excluding the Contractor's on-site personnel (payment for which shall be included in the Contractor's Fee) and excluding general home office overhead."

{¶33} The Valashinases alleged that, contrary to the terms of the Agreement as well as the parties' mutual understanding of those terms, Mannarino and Transitions, Inc. "did adjust, upcharge, and mark-up the invoices of subcontractors and vendors for work on the Property" and "submitted those fraudulent invoices to the Plaintiffs with the intent of misleading the Plaintiffs into relying upon those amounts and in an effort to cause the Plaintiffs to pay those adjusted and fraudulent amounts." Moreover, "it may be that fellow co-owners of the company Anthony and Michael Fimiani controlled and directed billing operations or were aware of the fraudulent behavior." Amended Complaint at ¶ 83-84, 88.

{¶34} In their Brief in Opposition to Summary Judgment, the Valashinases included an affidavit by Kimberlee wherein she averred that Mannarino and Transitions, Inc. added "hidden mark-ups to vendor and subcontractor invoices to deceive [them]

7

and earn more than the agreed-upon fee," and that, unaware of this fraudulent behavior, they paid the invoices. Attached to Kimberlee's affidavit were invoices received from Transitions, Inc. for subcontractor work in the amounts of $4,000 (John Lipnos) and $6,120 (Kelco Hardwood Floors). Also attached was a Transitions, LLC Profit and Loss Detail indicating that these invoices were originally submitted to Transitions, LLC for $3,000 (John Lipnos) and $5,095 (Kelco Hardwood Floors).

{¶35} The trial court granted summary judgment as to the fraud claim on the grounds that "Transitions, Inc.'s duty not to add a mark-up to a subcontractor or vendor invoice is a contractual obligation, and Plaintiffs cannot assert this alleged contractual breach as a fraud claim." The court relied upon the following proposition of law: "Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract." *Schwartz v. Bank One, Portsmouth, N.A.*, 84 Ohio App.3d 806, 810, 619 N.E.2d 10 (4th Dist.1992).

{¶36} The reasoning behind this rule has been set forth by the Ohio Supreme Court as follows:

> The economic-loss rule generally prevents recovery in tort of damages for purely economic loss. See *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 45, 537 N.E.2d 624; *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 3, 560 N.E.2d 206. "'[T]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" *Chemtrol*, 42 Ohio St.3d at 44, 537 N.E.2d 624, quoting *Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.* (Iowa 1984), 345 N.W.2d 124, 126. See, also, *Floor Craft*, 54 Ohio St.3d at 3, 560 N.E.2d 206. This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract

8

> law, which holds that "parties to a commercial transaction should remain free to govern their own affairs." *Chemtrol*, 42 Ohio St.3d at 42, 537 N.E.2d 624. See, also, *Floor Craft*, 54 Ohio St.3d at 7, 560 N.E.2d 206, quoting *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.* (1988), 236 Va. 419, 425, 374 S.E.2d 55. "'Tort law is not designed * * * to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.'" *Floor Craft*, 54 Ohio St.3d at 7, 560 N.E.2d 206, quoting *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d 55.

*Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 6.

{¶37} The issue, then, is whether there is a duty not to defraud independent of the Construction Agreement. We conclude that there is. The societal interest in protecting persons against fraud, in particular the falsification of billing statements, is evidenced by both the civil and criminal liability imposed for such actual fraud. *See, e.g., State v. Alexander*, 10th Dist. Franklin No. 06AP-647, 2007-Ohio-4177, ¶ 25 (falsified invoices supported conviction for forgery); *State v. Fiorenzo*, 108 Ohio App.3d 500, 511-512, 671 N.E.2d 287 (11th Dist.1996) (the same). The Valashinases direct us to two cases involving home remodeling contracts wherein the plaintiffs were allowed to pursue their claims for fraud and breach of contract based on deceptive billing practices. *Snapp v. Castlebrook Builders, Inc.*, 2014-Ohio-163, 7 N.E.3d 574, ¶ 104 (3d Dist.) ("[t]he same actions by Appellants that were alleged to be fraudulent and to result in breach of contract and unjust enrichment" involved "representations as to price and billing * * * and excessive billing that included double and triple charges"); *Fleischer v. George*, 9th Dist. Medina No. 09CA0057-M, 2010-Ohio-3941, ¶ 33 (plaintiff's claims for fraud and breach of contract "dealt with a common set of facts: that [the defendant]

9

misrepresented the degree of completion of the project and did not bill according to the contract terms").

{¶38} Similarly, this court, in *Dana Partners, L.L.C. v. Koivisto Constructors & Erectors, Inc.*, 11th Dist. Trumbull No. 2011-T-0029, 2012-Ohio-6294, implicitly recognized the viability of a fraud claim in connection with a claim for breach of contract. In *Dana*, the plaintiff's "fraud claim was based upon the allegation that [the defendant] has purposely made false representations in the monthly invoices concerning the amount due for the services rendered by his company." *Id.* at ¶ 57. In recognizing the viability of this claim, we noted "that a finding of fraud cannot be predicated upon an innocent mistake of fact; rather, it must be shown that the defendant had actual knowledge or was grossly negligent in failing to ascertain the truth." *Id.*

{¶39} The appellees counter by citing authority for the proposition that holding a party liable for fraud based upon actions constituting a breach of contract "would be to 'abandon the venerable rule that the motive of a breaching party to a contract is irrelevant to the merit of the promisee's claim, and would allow parties to convert contract actions into actions in tort by attacking the motive of the breaching party * * *.'" (Citation omitted.) *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (9th Dist.1996). As stated by the Ohio Supreme Court almost a century ago, "the averment that the breach was unlawful, willful, wanton, and malicious does not change the action from one *ex contractu* to one *ex delicto*." *Ketcham v. Miller*, 104 Ohio St. 372, 136 N.E. 145 (1922), syllabus; *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983) ("it is no tort to breach a contract, regardless of motive").

10

{¶40} These statements are not inconsistent with this court's position in *Dana* that claims for fraud and breach of contract may be raised together when intentional or purposeful fraud is alleged (other courts have used the term "actual fraud" to contrast with merely constructive fraud or negligent representation). *See, e.g.*, *Huntington Ingalls Inc. v. Travelers Indemn. Co.*, E.D.Va. No. 4:18cv147, 2019 WL 5580226, *4 ("[c]laims for actual fraud, as opposed to constructive fraud, are tort claims and are exempt from the economic loss rule * * * because an actual fraud claim relies on the duty to be truthful, which is a duty imposed by law, not by contract") (citations omitted).

{¶41} An examination of the opinion in *Textron* confirms that, even under the "venerable rule" that motive is irrelevant for breach of contract, actual fraud claims may still be raised as arising from a duty outside of the contract. *Textron* involved the lease of a computer. Textron sued Nationwide for breaching the lease as well as for fraud. Textron claimed Nationwide intentionally upgraded the computer without obtaining Textron's consent, as required by the lease. The court of appeals rejected the fraud claim: "Nationwide's duty to obtain consent for the * * * upgrade was purely contractual" and the "additional allegation of an *intentional* failure to obtain Textron's consent to the upgrade by claiming concealment does not change the contractual nature of [the] claim." *Textron* at 151.

{¶42} Next, Textron claimed that Nationwide concealed the fact that it had executed a second sublease of the computer in violation of the lease. Again, the court rejected the claim as fraud: "Changing the characterization of the allegation against Nationwide from 'failure to obtain consent' to 'concealment' of the sublease does not change the ultimate nature of the action as one for breach of contract." *Id.* at 152.

11

{¶43} Finally, Textron argued that Nationwide had concealed the location of the computer after moving it without obtaining Textron's consent as required by the lease. In this instance, the court of appeals recognized the fraud claim. The court was careful to distinguish that the actionable fraud was not the failure to advise Textron of the computer's actual location which was a contractual duty. Rather, Textron "presented evidence of an affirmative representation by Nationwide that the computer was located in Columbus, Ohio just days before it was relocated to Minnesota." *Id.* The court recognized the duty of a party to a transaction to fully disclose facts of a material nature which may induce the other party to act or refrain from acting when the failure to disclose would result in deception. Nationwide failed to disclose the computer's true location after its transfer to Minnesota. "Thus, pertaining to its fraud claim, Textron offered evidence of a duty to disclose the location of the computer separate from that created by the master lease. Having made a prior statement which was untrue or misleading, Nationwide was under a duty to disclose the relocation of the [computer]." *Id.* at 153; *Ineos USA, L.L.C. v. Furmanite Am., Inc.*, 3d Dist. Allen No. 1-14-06, 2014-Ohio-4996, ¶ 21 ("[a] tort claim can proceed where 'the facts of the case show an intentional tort committed independently, but in connection with a breach of contract * * *'") (citation omitted).

{¶44} Accordingly, we hold that the allegation that Mannarino falsified invoices before presenting them to the Valashinases for payment violated a duty independent of the Construction Agreement and so provided grounds for a claim of fraud. This holding applies to Mannarino and to Transitions, Inc. only and, with respect to these parties, the grant of summary judgment as to Fraud (Count VI) is reversed. The Valashinases have

12

presented no evidence that Transitions, LLC or the Fimianis had any involvement in or were even aware of the invoices being inflated. The grant of summary judgment in favor of Transitions, LLC and the Fimianis stands.

{¶45} A final observation should be made. As noted above, the economic-loss rule rests on the premise "that tort liability may not be imposed for purely economic damages." *Floor Craft Floor Covering*, 54 Ohio St.3d at 3, 560 N.E.2d 206; *Corporex*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, at ¶ 6. Thus, "[w]here the tort claim alleges a breach of an independent duty, it must also allege damages that are separate and distinct from the breach of contract." *Ineos USA* at ¶ 21; *Textron* at 151 ("an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract").

{¶46} The appellees argue that the Valashinases failed to offer evidence of damages arising from the alleged fraud independent of the damages which they claimed for the breach of the Agreement. Further, the appellees note that the Valashinases, at trial, "did prevail on a breach of contract claim and received the compensatory damages award that they are entitled to receive under that claim as awarded by the jury." Appellees' brief at 8. We decline to affirm the grant of summary judgment on the fraud claim in its entirety on the grounds that the Valashinases failed to raise an issue regarding damages. Because the trial court dismissed the fraud claim prior to trial, the jury could only award damages for breach of contract. In several of the cases cited above, the jury found liability either under the fraud or the contract claims, but not both. *See Dana*, 2012-Ohio-6294, at ¶ 13 (liability for breach but not fraud) and

*Snapp*, 2014-Ohio-163, at ¶ 63 (liability for fraud but not breach). The distinction is consequential inasmuch as a finding of fraud could entail an award of punitive damages. Accordingly, the Valashinases are entitled to consideration of their fraud claim as against Transitions, Inc. and Mannarino.

{¶47} To the extent indicated above, the first assignment of error is with merit.

{¶48} In the second assignment of error, the Valashinases argue that the trial court erred in granting summary judgment on their claim to pierce the corporate veil of Transitions, Inc. so as to hold Mannarino and the Fimianis personally liable as shareholders.

{¶49} "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993), paragraph three of the syllabus. "To fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Dombroski v. Well Point, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, syllabus.

{¶50} The trial court granted summary judgment based on the third factor: "to

the extent that Plaintiffs may be injured if they are successful on their claims against Transitions, Inc., this injury is not separate from their direct claim for fraudulent conveyance." We express no opinion as to the propriety of the lower court's conclusion, but choose to base our affirmance of that judgment on the first prong of the test.

{¶51} The Valashinases presented the following evidence which they claim raises a genuine issue of material fact as to whether the first prong is met: Transitions, Inc. transferred all of its assets to Transitions, LLC; Transitions, Inc. entered into the Construction Agreement with the Valashinases while it was insolvent; many of the invoices issued to the Valashinases contain the name "Transitions by Firenza, LLC"; and no corporate documents were produced regarding the transfer of assets to Transitions, LLC, any consideration paid by Transitions, LLC, or the winding down or dissolution of Transitions, Inc. Appellants' brief at 12.

{¶52} Accepting the foregoing as true and construing all reasonable inferences therefrom in the Valashinases' favor, there is no evidence that Mannarino and/or the Fimianis exercised a control so complete over Transitions, Inc. that it had no separate mind, will, or existence of its own. The evidence presented by the Valashinases arguably demonstrates corporate wrongdoing by Transitions, Inc., but wholly fails to identify a particular shareholder (if any) who was responsible for that wrongdoing. Given the evidence presented, it is just as probable that the actions taken by Transitions, Inc. reflected the corporate will of all its shareholders as it did the alter ego of an individual shareholder.

{¶53} The second assignment of error is without merit.

{¶54} In the third assignment of error, the Valashinases argue that the trial court

erred in directing a verdict in Mannarino's favor on their Home Construction Service Suppliers Act claim as there was ample evidence that he participated in violations of the Act.

{¶55} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Civ.R. 50(A)(4).

{¶56} "A motion for a directed verdict does not present a question of fact or raise factual issues, but instead presents a question of law, even though in deciding such a motion it is necessary to review and consider the evidence." *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 430 N.E.2d 935 (1982), paragraph one of the syllabus. Since it is a question of law, the granting of a motion for directed verdict is reviewed under a de novo standard. *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 22; *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173, ¶ 23.

{¶57} The Home Construction Service Suppliers Act provides, in relevant part: "(A) No home construction service supplier shall[,] * * * (3) [a]fter entering into a contract with an owner, do any of the following: * * * (d) Fail to perform the home construction service in a workmanlike manner; * * * (f) Fail to provide a full refund within a reasonable time period for any goods or services that the home construction service supplier has failed to deliver in accordance with the terms and conditions of the contract

16

* * * and for which the supplier has received payment; * * * (7) Intentionally understate or intentionally misstate the estimated cost of the home construction service; (8) Intentionally misrepresent any aspect of the transaction or the nature or the quality of the work or materials." R.C. 4722.03.

{¶58} For the purposes of the Act, a "home construction service supplier" is defined as "a person who contracts with an owner to provide home construction services for compensation and who maintains in force a general liability insurance policy in an amount of not less than two hundred fifty thousand dollars." R.C. 4722.01(D).

{¶59} Mannarino did not contract with the Valashinases and, therefore, does not meet the definition of a home construction service supplier under the Act. The Valashinases' argument does not however, rely on the terms of the Home Construction Service Suppliers Act but, rather, on related case law.

{¶60} The Valashinases contend that, prior to 2012, "homeowners brought home construction claims under [Ohio's] Consumer Sales Practices Act." Appellants' brief at 19-20; *Danley v. Bialko*, 9th Dist. Lorain No. 91CA005024, 1991 WL 199910, *1 ("home remodelers are 'suppliers' and agreements between remodelers and homeowners are 'consumer transactions' within R.C. Chapter 1345"); *Collins v. Kingsmens Ents., Inc.*, 8th Dist. Cuyahoga No. 66433, 1995 WL 23345, *2 ("the definition of a 'consumer transaction' as used in the Consumer Sales Practices Act * * * contemplates the inclusion of home improvement services").

{¶61} Under the Consumer Sales Practices Act, Ohio courts have found corporate officers personally liable for violation of the Act even apart from the doctrine of piercing the corporate veil. *State ex rel. Fisher v. Warren Star Theater*, 84 Ohio App.3d

17

435, 443, 616 N.E.2d 1192 (11th Dist.1992); *Luckoski v. Allstate Ins. Co.*, 2013-Ohio-5460, 5 N.E.3d 72, ¶ 36 (2d Dist.) ("we need not determine whether to pierce the corporate veil, since McGarvey's liability is not based upon his status as a shareholder but upon his direct actions in violating the OCSPA"). "In order to hold a corporate officer personally liable for his actions in violation of the CSPA, the evidence must show that the officer participated in the commission of an act or specifically directed the particular act to be done." *Yates v. Mason Masters, Inc.*, 11th Dist. Lake No. 2002-L-001, 2002-Ohio-6697, ¶ 24.

{¶62} The justification for holding officers personally liable is as follows:

> The [CSPA] does not change the existing common law of tort, nor does it change the common law rule with respect to piercing the corporate veil. A corporate officer may not be held liable merely by virtue of his status as a corporate officer. It does, however, create a tort which imposes personal liability upon corporate officers for violations of the act performed by them in their corporate capacities.

*Id.* at ¶ 25, citing *Grayson v. Cadillac Builders, Inc.*, 8th Dist. Cuyahoga No. 68551, 1995 WL 546916, *3, fn. 1; *Garber v. STS Concrete Co., L.L.C.*, 2013-Ohio-2700, 991 N.E.2d 1225, ¶ 28 (8th Dist.) ("[t]he officer's 'liability flows not from his status as * * * an officer * * *, but from his personal actions in violating CSPA") (citation omitted).

{¶63} In 2012, the Home Construction Service Suppliers Act was enacted, and the Consumer Sales Practices Act was amended to exclude "transactions involving a home construction service contract as defined in section 4722.01 of the Revised Code." Am.Sub.H.B. No. 383, Section 1, 2012 Ohio Laws File 107; R.C. 1345.01(A). While acknowledging that there is no case law applying the rule regarding corporate officers under the Sales Practices Act to the Home Construction Service Suppliers Act, the

Valashinases urge this court to do so and hold that whether Mannarino was subject to personal liability should have been decided by the jury. We decline to do so.

{¶64} There are substantive differences between the Home Construction Service Suppliers Act and the Consumer Sales Practices Act. Under the Sales Practices Act, liability is ultimately imposed for acts or practices deemed either "unfair or deceptive" under R.C. 1345.02 or "unconscionable" under R.C. 1345.03. In neither case would liability be imposed for acts or practices simply constituting a breach of contract. *Warren v. Denes Concrete, Inc.*, 9th Dist. Lorain Nos. 08CA009414 and 08CA009422, 2009-Ohio-2784, ¶ 23 ("[a] CSPA claim will not be successful unless the contractor's performance amounted to a deceptive, unfair, or unconscionable act"); *Tsirikos-Karapanos v. Ford Motor Co.*, 2017-Ohio-8487, 99 N.E.3d 1203, ¶ 38 (8th Dist.) ("[n]ot every breach of contract constitutes a CSPA violation") (citation omitted). Under the Home Construction Service Suppliers Act, in contrast, liability may be imposed for numerous acts or practices which would not otherwise subject a party to tort liability, such as failing to enter into a written contract compliant with the provisions of R.C. Chapter 4722, failing to perform construction in a workmanlike manner, or failing to provide a refund within a reasonable time for goods and services that are not delivered. R.C. 4722.03(A)(1), (3)(d), and (f). There is no requirement under the Home Construction Service Suppliers Act that violations be inherently deceptive, unfair, or unconscionable. Unsurprisingly, then, there is no comparable provision in the Home Construction Service Suppliers Act for treble damages as there is in the Consumer Sales Practices Act. R.C. 1345.09(B).

{¶65} We acknowledge that certain actions taken by Mannarino, discussed

19

above, arguably constitute tortious conduct in and of themselves as well as violations of the Home Construction Service Suppliers Act. The fact that there is some overlap between tort law and the Act does not justify the adoption of a rule that would subject corporate officers to personal liability for all violations of the Act.[1]

{¶66} The third assignment of error is without merit.

{¶67} For the foregoing reasons, the granting of summary judgment on the Valashinases' claim for Fraud (Count VI) is reversed as to Transitions, Inc. and Mannarino only. In all other respects, the judgment of the lower court is affirmed. This matter is remanded for further proceedings consistent with this opinion. Costs to be taxed between the parties equally.


CYNTHIA WESTCOTT RICE, J., concurs in judgment only,

TIMOTHY P. CANNON, P.J., concurs in part and concurs in judgment only in part, with a Concurring Opinion.


_____


TIMOTHY P. CANNON, P.J., concurring in part and concurring in judgment only in part.


---

1. We note that the Valashinases raised claims under both the Home Construction Service Suppliers Act (Count III) and the Consumer Sales Practices Act (Count VII), acknowledging at trial that it was uncertain which Act applied. The Consumer Sales Practices Act excludes "transactions involving a home construction service contract as defined in section 4722.01 of the Revised Code." R.C. 1345.01(A). "Home construction service" is defined therein as "the construction of a residential building." R.C. 4722.01(B). The Construction Agreement with the Valashinases was not for the construction of a home, but for the remodeling of an already existing home. The trial court determined that the Home Construction Service Suppliers Act applied and dismissed the claim under the Consumer Sales Practices Act. The Valashinases have not challenged that ruling.

{¶68} With regard to the first assignment of error, the majority reverses the dismissal of the fraud claim by concluding there is evidence that Mannarino committed fraud independent of his contractual obligations. I concur based on the evidence presented in opposition to summary judgment.

{¶69} In opposition to the motion for summary judgment, the Valashinases offered an exhibit to the trial court—incorporated into an affidavit averring fraud on behalf of Mannarino and Transitions, Inc.—of subcontractor invoices that are inconsistent with Transitions, Inc.'s own internal records with regard to pricing. The invoices appear to be a complete fabrication created and submitted to the Valashinases to appear as though they came directly from the subcontractors. This act is much more than simply billing the customer with a subcontractor markup that would constitute a breach of the contract. The discrepancy between the fabricated invoices and the corporate records demonstrate markups charged to the Valashinases in the amount of $2,025.00. Based on this, I agree the Valashinases set forth sufficient evidence in response to the motion for summary judgment to create a genuine dispute of material fact with regard to whether Mannarino and Transitions, Inc. committed fraud. The issues on remand, however, must be sufficiently narrow. This court's holding should clarify whether the fraud claim should include compensatory damages. I believe that it should. If the fraud claim is proven, it must be additionally determined whether the Valashinases are entitled to punitive damages and attorney fees for that claim alone, which are separate damages from the contract claims.

{¶70} In addition, the majority affirms the second assignment of error by concluding there was no evidence that Mannarino or the Fimianis exercised the

21

required control over Transitions, Inc. to pierce the corporate veil. The trial court granted summary judgment based on the third factor, concluding the Valashinases did not show injury separate from their fraudulent conveyance claim. The majority chose not to address the trial court's conclusion. Instead, the majority affirms the summary judgment ruling based on the first prong of the test, concluding it is just as probable that the actions taken by Transitions, Inc. reflected the corporate will of all shareholders as it did the alter ego of an individual shareholder. I concur with the majority's conclusion regarding the second assignment of error, but not with the analysis presented therein.

Therefore, I concur with the majority on the first assignment of error and concur in judgment only on the second assignment of error.